IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| BRIAN D. SEIM | ) | NO. C09-3071-DEO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S BRIEF IN** |
| | ) | **SUPPORT OF ITS MOTION** |
| THREE EAGLES COMMUNICATIONS, | ) | **FOR SUMMARY JUDGMENT** |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 3

III.  LEGAL ARGUMENT........................................................................................ 8

  A.  Summary Judgment Standard. ........................................................................ 8

  B.  Plaintiff Cannot Establish a Cause of Action for Discrimination or Failure to Accom-
     modate Under the Americans With Disabilities Act or the Iowa Civil Rights Act. .......... 9

    1.  Plaintiff Cannot Establish a Cause of Action for Disability Discrimination. ............... 9

      a.  Plaintiff Is Not "Disabled" Under the ADA. ........................................................ 10

      b.  Three Eagles' Knowledge of Plaintiff's Medical Condition Did Not Equate
         With Knowledge of a "Disability.".......................................................................... 11

      c.  Three Eagles Legitimately Denied Plaintiff a Promotion.................................... 12

    2.  Plaintiff Cannot Establish a Cause of Action for Failure to Accommodate. .............. 14

  C.  Plaintiff Cannot Establish a Cause of Action for Retaliation Under the Americans
     With Disabilities Act or the Iowa Civil Rights Act. ........................................................ 15

    1.  Plaintiff Did Not Engage In A Protected Activity. ...................................................... 16

    2.  There is No Causal Connection Between Any Protected Activity and Any Adverse
      Employment Action. ................................................................................................... 17

    3.  Plaintiff Cannot Overcome Three Eagles' Legitimate, Non-Discriminatory
      Reason for Plaintiff's Termination. ............................................................................. 17

  D.  Plaintiff Cannot Establish a Cause of Action for Discrimination Based on Perceived
     Sexual Orientation. ......................................................................................................... 18

E.      Plaintiff Cannot Establish a Cause of Action for Wrongful Termination in Violation

of Public Policy............................................................................................................. 19

IV.    CONCLUSION............................................................................................................. 20

This Brief is submitted in support of Defendant Three Eagles Communication, Inc.'s ("Three Eagles") contemporaneously filed Motion for Summary Judgment.  Based upon the well-established federal and Iowa law, as well as the undisputed facts of this case, it is clear that there is no genuine issue of material fact and that Three Eagles is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56.

## I.   <u>INTRODUCTION</u>

Three Eagles operates seven (7) radio stations in the Fort Dodge, Iowa, area (KIAQ, KXFT, KTLB, KKEZ, KVFD, KWMT, and KUEL).  Plaintiff Brian Seim was hired to start working in November of 2008 as an on-air personality for Three Eagles in Fort Dodge.  Miles Madden, known and referred to as "Miles Riker" (hereinafter "Riker"), was the Three Eagles Operations Manager and one of Plaintiff's supervisors.

Plaintiff appeared to feel unreasonably victimized by Riker during his employment.  Plaintiff submitted a lengthy diatribe complaining about Riker in which he asserted that Riker treated all employees poorly.  Plaintiff subsequently submitted his resignation on May 11, 2009.  Although Plaintiff claims he rescinded his resignation, there is no record of such and Three Eagles began searching to replace the Plaintiff.  When Riker informed Plaintiff that one of his shifts was being filled due to his resignation, Plaintiff unleashed an angry and irrational email to Riker claiming he was "out of control" and that corporate should "put a leash on him."  In this e-mail, Plaintiff made other ridiculous assertions and prohibited management from contacting Plaintiff on his cell phone.  Company officials, who had not terminated Plaintiff's employment, determined that he could not allow the Plaintiff back on the air for fear of how he might behave.  As such, Plaintiff was told not to return to work on May 19, 2009, even though he had already resigned.

1

Plaintiff's Complaint is based on the acceleration of his resignation date, as well as on the conduct of Three Eagles that occurred earlier in Plaintiff's employment. Plaintiff claims he was denied a reasonable accommodation and discriminatorily denied "promotions" because of his alleged disability. He also alleges he was fired in retaliation for making a complaint and that his termination was based on his perceived sexual orientation.

Plaintiff alleges he is "disabled" because he has a blood disease, though this disease does not substantially limit any major life activity. Plaintiff claims the medications he takes for his disability (not the disability itself) prevented him from working morning shifts. Despite this allegation, Plaintiff admits that he could and did perform the essential functions of his morning shift position. Neither the ADA nor Iowa law require Three Eagles to provide an accommodation which would enable Plaintiff to perform a job he was already performing, especially when he never requested such an accommodation.

Plaintiff's allegation that he was discriminatorily denied promotions is, similarly, without merit. In his administrative Charge of Discrimination, Plaintiff claimed that he was denied these promotions due to his age. In fact, he alleged, under oath, as follows: *I am well qualified for all the positions I applied for yet younger people were chosen each time, not skill level or experience and that goes against Company Handbook Policy itself.* Plaintiff has now abandoned his age discrimination allegation and claims the promotions were denied because of his alleged disability and/or perceived sexual orientation. During his deposition, Plaintiff listed five (5) different mid-day positions for which he allegedly applied. Even if Plaintiff had applied or expressed interest in these positions, he was not the best suited candidate for any of them and, thus, was not hired to fill these positions. Moreover, Plaintiff worked for Three Eagles for less

than a year – hardly enough time to be considered for a promotion.  As such, Plaintiff cannot sustain a disability and/or perceived sexual orientation discrimination claim.

Plaintiff's retaliation claim is, likewise, without merit.  Plaintiff alleges he was unlawfully retaliated against for submitting the complaint about Riker.  Plaintiff's complaint, however, included only general allegations that Riker treated *all* employees in a negative fashion.  Plaintiff did not expressly state or even imply in any manner that he believed Riker's conduct was based on Plaintiff's alleged disability or perceived sexual orientation.   As such, Plaintiff's complaint was not a protected activity and cannot give rise to a retaliation claim.  Further, there is no connection between Plaintiff's complaint and his termination, as Plaintiff *resigned* after submitting his complaint.  Moreover, Plaintiff was only terminated due to his extremely erratic and inappropriate behavior.  Riker recommended he be terminated – without ever having seen Plaintiff's complaint.  As such, no retaliation claim can be established.

Finally, Plaintiff alleges he was terminated based on his perceived sexual orientation.  To the contrary, Three Eagles management was unaware and uninterested in Plaintiff's sexual orientation.  Plaintiff concedes this fact by pointing to Riker's comment that he "didn't care" if Plaintiff was gay or not.  Rather than evidencing discriminatory animus, this comment indicates that Plaintiff's sexual orientation was irrelevant.

## II.    <u>STATEMENT OF FACTS</u>

Three Eagles Communications hired Plaintiff Brian Seim to start in November of 2008, as an on-air personality in Fort Dodge, Iowa.  (Deposition of Brian Seim ("Seim Depo.") 12:7-17, Appendix of Evidence filed in Support of Defendant's Motion for Summary Judgment ("Appx.") pg. 4.)  The General Manager for Three Eagles Communications was Bill Wells.  (Affidavit of Miles Madden a/k/a Miles Riker ("Riker Affidavit"), ¶ 2, Appx. pg. 66.)   After

Program Director Joe Zimmerman (Plaintiff's supervisor) resigned, Plaintiff was supervised by Duane Murley and Miles Riker, the Operations Manager.  (Seim Depo. 12:25-13:21, Appx. pg. 4 – 5; Riker Affidavit, ¶ 4, Appx. pg. 66-67.)

Plaintiff suffers from Graves' disease which he refers to as an "autoimmune blood disorder."   (Seim  Depo.  16:16-24,  27:7-9,  Appx.  pg.  6,  14.)    The  Plaintiff's  symptoms experienced  include  increased  weight,  impaired  vision,  insomnia,  hypertension,  anxiety, narcolepsy and difficulty standing for long periods of time.  (Seim Depo. 20:1-22:22, Appx. pg. 7 – 9.)  These symptoms can be alleviated with medication (Seim Depo. 21:7-15, Appx. pg. 8.) His medications cause him to be drowsy, confused and slur his speech in the mornings.  (Seim Depo.  23:22-24:9; 24:24-25:2, Appx. pg. 10 - 12.)

During his interview with Joe Zimmerman, Plaintiff revealed that he had a blood disease and would require time off for occasional treatments.  (Seim Depo. 26:2-27:25, Appx. pg. 13 - 14.)  Plaintiff also informed Duane Murley, via e-mail, that he needed occasional time off because he was "fighting a blood disease."  (Seim Depo. 28:11-30:2, Exhibit 5, Appx. pg. 15 – 17, 48-49; Murley Affidavit, ¶ 9, Appx. 83.)  In late December of 2008, Plaintiff claimed to have told Miles Riker that he needed occasional time off because he had a blood disease.  (Seim Depo. 30:17-32:13, Appx. pg. 17 - 19.)[1]  Plaintiff also told Bill Wells that he needed occasional time off because he had a blood disease.  (Seim Depo. 34:2-35:5, Appx. pg. 21 – 22; Wells Affidavit, ¶ 4, Appx. pg. 93.)  These single conversations were the only specific conversations that took place regarding Plaintiff's medical condition with company management.  (Seim Depo. 36:1-19, Appx. pg. 23.)

---

[1] Riker asserts that he was unaware of Plaintiff's disorder until May 14, 2009.  (Riker Affidavit, ¶ 10, Appx. pg. 68.) For purposes of this Motion, Three Eagles concedes that management was aware that Plaintiff had a blood disorder.

Although Plaintiff claims to have requested afternoon shifts, Plaintiff never represented that he could not work mornings because of his medical condition. (Seim Depo. 38:13-17, Appx. pg. 24.) Moreover, Plaintiff could and did perform the essential job functions on the morning shift. (Seim Depo. 42:2-6, Appx. pg. 25.) Plaintiff also worked on KKEZ in the afternoons. (Riker Affidavit, ¶ 11, Appx. pg. 69.) Plaintiff did request accommodations of a chair and time off from work, both of which were granted to him. (Seim Depo. 42:15-43:21, 44:13-20, Appx. pg. 25-26, 27.)

Plaintiff alleges that he expressed an interest in five different promotional positions at Three Eagles. (Seim Depo. 67:6-11, Appx. pg. 32.) He does not, however, claim he formally applied for such positions. Plaintiff believes he was denied promotional opportunities because of his disability and perceived sexual orientation because he does not know what other reason there could be to deny him the positions. (Seim Depo. 71:9-21, Appx. pg. 33.) The Program Director position at KWMT vacated by Joe Zimmerman, which Plaintiff allegedly expressed interest in, was given to Duane Murley. As opposed to Plaintiff, Murley had knowledge of the Selector Software and had much more experience and history with the station than Plaintiff. (Affidavit of Bill Wells ("Wells Affidavit"), ¶ 5, Appx. pg. 94.) Plaintiff allegedly expressed interest in a position filled by Brooke Bickford. Ms. Bickford was hired to do mornings on KKEZ, an adult contemporary station. Conversely, Plaintiff was a morning personality on a classic country station and was not as suitable as Ms. Bickford to perform an adult contemporary format. (Wells Affidavit, ¶ 6, Appx. pg. 94.) Plaintiff allegedly expressed interest in a position of Program Director at KKEZ vacated by Lindy Kay. This position was not filled, although Riker assumed those job duties. (Wells Affidavit, ¶ 7, Appx. pg. 94.)

Plaintiff did not receive the Production Director position at 99 X because there was no such open position. (Wells Affidavit, ¶ 8, Appx. Pg. 94.)  Plaintiff did not receive the Program Director position at K97 "Hot Country" because that position was not filled until several months after Plaintiff's resignation, in September of 2009.  (Wells Affidavit, ¶ 8, Appx. pg. 94.)

Despite Plaintiff's unsubstantiated speculation, Three Eagles management was unaware and uninterested in Plaintiff's sexual orientation.  (Riker Affidavit, ¶ 10, Appx. pg. 68; Affidavit of Duane Murley ("Murley Affidavit"), ¶ 8, Appx. pg. 82-83.)  The only occasion in which Miles Riker specifically mentioned Plaintiff's sexual orientation, according to Plaintiff, was a conversation in which Riker asked Plaintiff if he had AIDS and said he didn't care one way or the other if Plaintiff was gay.  (Seim Depo. 32:1-33:4, Appx. pg. 19 - 20.)[2]  Other than the occasion in which Riker told Plaintiff he did not care if Plaintiff was gay, Plaintiff's only other allegation of Riker referring to Plaintiff's sexual orientation was an occasion in which Riker said that that he "knew [Plaintiff] was a pansy" and an occasion in which Riker told Plaintiff he would "make some man very happy some day."  (Seim Depo. 48:11-25; 49:22-50:11, Appx. pg. 28 - 30.)  Plaintiff's sexual orientation or perceived sexual orientation was never brought up or commented upon by management other than Riker.  (Seim Depo. 53:5-25, Appx. pg. 31.)

Plaintiff sent a complaint e-mail to Cindy Harris on May 4, 2009, and again on May 12, 2009, regarding Riker's management of the Fort Dodge stations.  (Seim Depo. 81:19-25; 84:17-23; 91:8-15, Appx. pg. 38 – 39, 42)  Plaintiff also claims to have submitted a hard copy of his complaint to Bill Wells on or about May 4, 2009.  (Seim Depo. 86:20-87:5, Appx. pg. 40 - 41.)  Plaintiff's complaint submitted to Wells and Harris did not allege that he had been discriminated against or harassed by Three Eagles management on the basis of any legally protected category.

---

[2] Although Riker recalls this conversation differently (Riker Affidavit, ¶ 10, Appx. pg. 68), Three Eagles will accept Plaintiff's allegations as true for the purposes of this Motion.

(Seim Depo. 103:2-16, 104:6-10, Exhibit 11, Appx. pg. 43-44, 53-63; Wells Affidavit, ¶ 9, Appx. pg. 95.) Rather than alleging discrimination against himself, Plaintiff's complaint alleged that Riker treated all employees in the same negative fashion. (Seim Depo. 104:16-22, Appx. pg. 44.) Despite Plaintiff's speculations, until after Plaintiff's termination, Riker was never aware of the substance of Plaintiff's complaint. (Riker Affidavit, ¶ 7, Appx. pg. 67.)

On May 11, 2009, Plaintiff submitted a written notice of resignation to Bill Wells, Duane Murley, Miles Riker and Lee Wallace. (Seim Dep. 73:18-74:19, Exhibit 6, Appx. pg. 34-35, 50-52; Wells Affidavit, ¶ 10, Appx. Pg. 95.) Plaintiff's resignation specified that it would be effective June 1, 2009, or sooner if management desired. (Seim Dep. 73:18-74:19; 109:1-5, Exhibit 6, Appx. pg. 34-35, 46, 50-52.) Plaintiff claims to have rescinded his resignation to Duane Murley, though Plaintiff was later told that Mr. Murley did not have authority to accept the rescinded resignation. (Seim Depo. 78:6-79:5, Appx. pg. 36-37.)[3] Naturally, after Plaintiff announced his resignation, Riker sought to fill the Plaintiff's positions. (Riker Affidavit, ¶ 8, Appx. pg. 68; Murley Affidavit, ¶ 7, Appx. pg. 82; Wells Affidavit, ¶ 10, Appx. Pg. 95.) Accordingly, on May 19, 2009, at 12:56 p.m., Riker informed Plaintiff via e-mail that Plaintiff's shift on Mix 94.5 was being assumed by Jay Thomas. (Seim Depo. 104:25-105:12, Exhibit 12, Appx. pg. 44-45, 64-65; Riker Affidavit, ¶ 8, Appx. pg. 68.)

Shortly thereafter, at 2:34 p.m. on May 19, 2009, Plaintiff sent an angry and irrational email to Riker, which accused Riker of retaliation and claimed that he (Riker) was "out of control" and that corporate should "put a leash on him." (Riker Affidavit, ¶ 9, Exhibit B, Appx. pg. 68, 77-80; Wells Affidavit, ¶ 11, Appx. pg. 95.) Plaintiff's May 19, 2009, e-mail also instructed management not to contact him on his telephone, even though he was still an

---

[3] Murley does not recall Plaintiff ever rescinding his resignation. (Murley Affidavit, ¶ 5, Appx. pg. 82.)

employee. (Riker Affidavit, ¶ 9, Exhibit B, Appx. pg. 68, 77-80.) Given this erratic and inappropriate response from Plaintiff, company management determined that it could not allow the Plaintiff back on the air for fear of how he might behave. (Riker Affidavit, ¶ 9, Appx. pg. 68; Wells Affidavit, ¶ 11, Appx. pg. 95.) As such, Plaintiff was told not to report to work after May 19, 2009. (Riker Affidavit, ¶ 9, Appx. pg. 68.)

### III.   LEGAL ARGUMENT

Plaintiff alleges six (6) causes of action. His First Cause of Action is brought under the Americans with Disabilities Act ("ADA") for failure to promote on the basis of his disability and for failure to accommodate. (Plaintiff's Third Cause of Action mirrors this claim, but is brought under the Iowa Civil Rights Act.)

Plaintiff's Second Cause of Action is also brought under the ADA for retaliatory termination because Plaintiff opposed a discriminatory practice. (Plaintiff's Fourth Cause of Action mirrors this claim, but is brought under the Iowa Civil Rights Act.)

Plaintiff's Fifth Cause of Action is brought under the Iowa Civil Rights Act for discrimination based on Plaintiff's perceived sexual orientation. Plaintiff's Sixth Cause of Action is brought under Iowa common law for wrongful termination in violation of public policy. Because there is no issue of material fact regarding any of these causes of action, Three Eagles is entitled to summary judgment as a matter of law.

### A.   Summary Judgment Standard.

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1050 (8th Cir. 2007); Fed.R.Civ.P. 56(c).

Once the moving party meets its burden to show that there is no issue of material fact, the plaintiff must provide evidence of specific facts (beyond allegations made in the complaint) to create a triable controversy. *Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir. 2004). "Summary judgment is mandated if the nonmoving party fails to establish the existence of an essential element of its case. [A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Popp Telecom, Inc. v. American Sharecom, Inc.*, 361 F.3d 482, 487 (8th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Riggs v. County of Banner*, 159 F.Supp.2d 1158, 1163 (D. Neb. 2001) (citations omitted). "Evidence, not contentions, avoids summary judgment." *Mayer v. Nextel W. Corp.*, 318 F.3d 803 (8th Cir. 2003). Under this standard, Plaintiff's claims must be dismissed.

**B.     Plaintiff Cannot Establish a Cause of Action for Disability Discrimination or Failure to Accommodate Under the ADA or the Iowa Civil Rights Act.**

Because the Iowa Civil Rights Act ("ICRA") is modeled after federal discrimination laws, Iowa courts traditionally look to federal case law for interpretive guidance in employment discrimination cases. *Van Orden v. Wells Fargo Home Mortg., Inc.*, 443 F.Supp.2d 1051 (S.D.Iowa 2006); *Sommers v. Iowa Civil Rights Comm'n*, 337 N.W.2d 470, 474 (Iowa 1983); *Lynch v. City of Des Moines*, 454 N.W.2d 827, 833 n.5 (Iowa 1990). Therefore, the analysis is the same for both Plaintiff's First Cause of Action (under the ADA) and Third Cause of Action (under the ICRA) for disability discrimination and failure to accommodate.

**1.     Plaintiff Cannot Establish a Cause of Action for Disability Discrimination.**

In ADA cases, courts apply the Title VII burden-shifting analysis that the United States Supreme Court established in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). *See Burchett v. Target Corp.,* 340 F.3d 510, 516 (8th Cir. 2003); *Snow v. Ridgeway Med. Ctr.,* 128 F.3d 1201, 1205 (8th Cir. 1997). To establish a *prima facie* case under the ADA, Plaintiff must show: (1) he is a "disabled" person within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job (either with or without reasonable accommodation); and (3) he has suffered an adverse employment action. *See Burchett,* 340 F.3d at 516.

Once the *prima facie* burden is carried, the burden of production shifts to the employer to articulate legitimate nondiscriminatory reasons for its actions. *Burchett,* 340 F.3d at 516-17. Finally, once the Defendant has articulated a legitimate, non-discriminatory reason for its actions, Plaintiff carries the ultimate burden of proving that such reason is pretext for discrimination. *Id.* at 516, 519. In this case, Plaintiff cannot prove that he is disabled, nor can he show that Three Eagles had sufficient knowledge of his alleged disability. Additionally, Plaintiff cannot show that Three Eagles' legitimate, non-discriminatory explanation for its actions were pretext for discrimination.

a.      **Plaintiff Is Not "Disabled" Under the ADA.**

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." *See* 42 U.S.C. § 12102(2)(A). Plaintiff's blood disorder does not constitute a disability, as it does not substantially limit any major life activity. Plaintiff alleges that his Graves' disease causes increased weight, impaired vision, insomnia, hypertension, anxiety, narcolepsy, and difficulty standing for long periods of time.[4] Such symptoms, many of which can be alleviated by medications, do not substantially

_____

[4] While Plaintiff alleges that he is drowsy, confused and has slurred speech in the mornings, these are effects of his medication, rather than effects of the disability itself. (Seim Depo. 23:22-24:9; 24:24-25:2, Appx. pg. 10-12.)

limit any major life activities. *See, e.g. Petersen v. ProxyMed, Inc.*, 617 F.Supp.2d 835 (D.S.D. 2008); *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 724-25 (8th  Cir. 2002)( "[M]ost disabilities from which people suffer, including diabetes, do not have a substantial enough effect on their major life activities."); *Williamson v. International Paper Co.*, 85 F. Supp. 2d 1184, 1194-95 (S.D. Ala. 2000)(Employee who suffered from diabetes and neuropathy was not actually disabled within the meaning of the ADA since he failed to show that his physical impairments substantially limited his major life activities of walking or working.).

In *Petersen,* the plaintiff had cryofibrinogenaemia, a rare blood disorder, which caused her to experience dramatic weight loss, loss of some of her hair, and welts. *Petersen*, 617 F.Supp.2d at 840. The court found that her blood disorder did not have a substantial effect on her major life activities because she did not allege anything beyond the dietary restriction and was able to fulfill her medical requirement by eating snack bars and nutritional supplements. *Id.* at 842. Similarly, in this case, though Plaintiff may experience symptoms of his disorder, he is not substantially limited in his ability to work, walk, stand, eat and sleep. Plaintiff admits he can perform the essential functions of his job without accommodation. (Seim Depo. 42:2-6, Appx. pg. 25.) As such, Plaintiff is not "disabled" within the meaning of the ADA.

     **b.**     **Three Eagles' Knowledge of Plaintiff's Medical Condition Did Not Equate With Knowledge of a "Disability."**

A prerequisite to establishing a prima facie case of disability discrimination is that the employer be aware of the alleged disability. Even if Three Eagles knew Plaintiff had a "blood disorder," such knowledge is insufficient to establish a claim of disability discrimination. *See Simmonsen v. Trinity Regional Health System*, 336 F. 3d 706, 709 (8th Cir. 2003) (employer's "awareness of [plaintiff's past medical problems does not establish that it regarded her as disabled"); *Miller v. National Cas. Co.*, 61 F.3d 627, 630 (8th Cir. 1995) (symptoms known to

employer prior to an employee's termination must be "so obviously manifestations of an underlying disability that it would be reasonable to infer that [the] employer knew of the disability") (citing *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 934 (7th Cir. 1995)); *Bonilla v. Boces*, 2010 WL 3488712, at *7 (W.D.N.Y., 2010) ("[E]ven assuming [Plaintiff] informed [Supervisor] of her condition, a supervisor's mere awareness of an employee's condition does not necessarily impute sufficient knowledge of the disability to the employer.") (citing *Moore v. Time Warner GRC 9*, 18 F.Supp.2d 257, 262 (W.D.N.Y. 1998)).

In this case, Plaintiff told management only that he had a "blood disorder." He told no one what he actually suffered from -- Graves' disease. (Seim Depo. 36:1-19, Appx. pg. 23.) The extent of his conversations with management involved requests for time off, which were granted. (*Id.*) Plaintiff never specified what his condition actually was or the extent of his condition. Given this lack of knowledge, Three Eagles could not have denied Plaintiff promotions on this basis.

      **c.**      **Three Eagles Legitimately Denied Plaintiff A Promotion.**

Plaintiff alleges that he was denied promotions because of his disability. In failure to promote cases, a plaintiff cannot establish discrimination unless the plaintiff's credentials "are so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Millbrook v. IBP, Inc.,* 280 F.3d 1169 (7th Cir. 2002) (citing *Byrnie v. Town of Cromwell,* 243 F. 3d 93, 103 (2nd Cir., 2001); *see also Wilson v. B/E Aerospace Inc.,* 376 F.3d 1079, 1090 (11th Cir., 2004) (holding that the "disparity in qualifications [must be] so apparent as virtually to jump off the page and slap you in the face.").

In this case, Three Eagles hired individuals who best fit the open positions. One of the positions Plaintiff allegedly expressed interest in was a Program Director position at KWMT

vacated by Joe Zimmerman in February 2009 (Wells Affidavit ¶ 3, Appx. Pg 93.) Essentially, he wanted his boss' job after working there for 3-4 months. This position, however, was given to Duane Murley, who had much more experience and history with the station than Plaintiff. (Wells Affidavit, ¶ 5, Appx. pg. 94.) While Mr. Murley had worked with Three Eagles for over 20 years, Plaintiff had only been with the Company for 3-4 months at that time. (Murley Affidavit, ¶ 2, Appx. pg. 81.)

Plaintiff also allegedly expressed interest in a position filled by Brooke Bickford. Ms. Bickford was hired to do mornings on KKEZ, an adult contemporary station. (Wells Affidavit, ¶ 6, Appx. pg. 94.)[5] Conversely, Plaintiff was a morning personality on a classic country station and was not as suitable as Ms. Bickford to perform an adult contemporary format. (Wells Affidavit, ¶ 6, Appx. pg. 94.) Plaintiff allegedly expressed interest in a position of Program Director at KKEZ vacated by Lindy Kay. This position was not filled, and Miles Riker assumed the duties at no extra pay (Wells Affidavit ¶ 7, Appx pg. 94.) Plaintiff did not receive the Production Director position at 99 X because there was no such open position. (Wells Affidavit, ¶ 8, Appx. Pg. 94.) Plaintiff did not receive the Program Director position at K97 "Hot Country" because the position was not filled until several months after Plaintiff's resignation, in September of 2009. (Wells Affidavit, ¶ 8, Appx. pg. 94.)

Plaintiff cannot show that these legitimate, non-discriminatory reasons for not promoting Plaintiff were pretextual. "To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'" *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005) (internal citation omitted). Plaintiff can produce no evidence to support his speculative claim that

---

[5] Plaintiff never asked Wells about this position. (Wells Affidavit, ¶ 6, Appx. pg. 94.) Further, this requested morning position was contrary to Plaintiff's claim that he requested *afternoon* positions. (*Id.*)

he was denied promotional opportunities because of his blood disorder.   Rather, Plaintiff believes he was denied promotional opportunities because of his disability and perceived sexual orientation because he doesn't know what other reason the denials could be based on.   (Seim Depo. 71:9-21, Appx. pg. 33.)   Such speculation cannot satisfy his burden of proof or prevent a well-founded Motion for Summary Judgment.  *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1136 (7th Cir. 1997) (holding that the plaintiff's beliefs of discrimination were based solely on speculation, and a personality conflict doesn't ripen into an ADA claim simply because one of the parties has a disability).   Accordingly, Plaintiff's claims for disability discrimination in promotions must fail.

**2.      Plaintiff Cannot Establish a Cause of Action for Failure to Accommodate.**

An employer must provide a reasonable accommodation if doing so would enable a disabled employee to perform the essential functions of his job without an undue burden on the employer.   42 U.S.C § 12111(8)-(10).   In order to sustain a cause of action for failure to accommodate, Plaintiff must first establish he is "disabled" under the ADA and that the employer knew of the disability.   *Miller v. National Casualty Company*, 61 F.3d 627 (8th Cir. 1995) (the court held that an employer must have knowledge of physical or mental limitation before it can accommodate employee).   As indicated above, Plaintiff cannot do so.

Even if Plaintiff could establish he was disabled and that Three Eagles was aware of such disability, Plaintiff must still establish that he, in fact, requested a reasonable accommodation that would enable him to perform the essential functions of his job.  29 C.F.R. § 1630.9 (placing the responsibility on the employee to make known his/her request for a reasonable accommodation); *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 870 (8th Cir. 2008) ("If an employee fails to make a request for accommodation, then his employer has no duty to

accommodate.") (citing *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002)).  Plaintiff was not denied any accommodation for a disabling condition.

In this case, Plaintiff requested three things: a chair, time off for medical treatment and a promotion to a mid-day shift.  Plaintiff admits that he was both given the chair and the time off needed.  (Seim Depo. 42:15-43:21, 44:13-20, Appx. pg. 25-26, 27.)  Further, Plaintiff admits that he did not need an accommodation to work on a mid-day shift because he *could and did* perform the essential functions of his job in the morning shift.  (Seim Depo. 42:2-6, Appx. pg. 25.)  Since he was not disabled in performing a morning shift, Three Eagles was not legally required to provide an accommodation of granting him a mid-day shift.  *See Felix v. New York City Transit Authority,* 324 F. 3d 102 (2nd Cir. 2003) (holding that an employer has no duty to accommodate a related medical condition if that condition is not itself disabling).

**C.    Plaintiff Cannot Establish a Cause of Action for Retaliation Under the Americans With Disabilities Act or the Iowa Civil Rights Act.**

In order to establish a *prima facie* case of retaliation, under both the ADA and ICRA, a plaintiff must show (1) he was engaged in statutorily protected activity; (2) the employer took adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action taken.  *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 678 (Iowa 2004); *Channon v. United Parcel Serv., Inc.,* 629 N.W.2d 835, 861-62 (Iowa 2001). *Moisant v. Air Midwest, Inc.*, 291 F.3d 1028, 1031 (8th Cir. 2002); *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).  Retaliation claims are proper for summary judgment. *Kehoe v. Anheuser-Busch, Inc.,* 995 F.2d 117, 120 (8th Cir. 1993).  In this case, Plaintiff did not engage in a protected activity, as his complaint was not a protected activity.  Even if it were, there is no causal connection between Plaintiff's complaint and his termination.  Further, even if

a *prima facie* case could be established, the company has articulated a legitimate, non-discriminatory reason for the adverse employment action, thereby placing the burden back to the Plaintiff to prove the reason was false or pretextual. *See EEOC v. Crown Zellerbach*, 720 F.2d 1008, 1012 (9th Cir. 1983); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

### 1.    Plaintiff Did Not Engage In A Protected Activity.

Plaintiff claims that he was terminated in retaliation for opposing a discriminatory practice.  Importantly, Plaintiff never opposed or complained about a discriminatory practice during his employment.  Plaintiff submitted a written complaint regarding Riker's managerial style, though this written complaint did not allege that management was discriminating against him or harassing him on the basis of any protected category.  (Seim Depo. 103:2-16, 104:6-10, Exhibit 11, Appx. pg. 43-44, 53-63; Wells Affidavit, ¶ 9, Appx. pg. 95.)  Rather, Plaintiff's claim was against Riker's managerial practices in general and in relation to all his subordinates. Plaintiff explicitly noted that Riker treated all employees in the same negative fashion, as noted in the following deposition excerpt:

```
 6 In this complaint, did you allege that
 7 Mr. Reiker treats you in a certain way because of your
 8 blood disease?
 9     A.  No, ma'am.  My complaint was a
10 generalization.
11     Q.  Okay.
12     A.  And I was alerting Three Eagles.  What I
13 was hoping for was an investigation, which the
14 handbook promised me, and then I would get more
15 details and but the investigation never took place.
16     Q.  Okay.  In this complaint -- and I'm sorry I
17 can't refer you to the spot, I didn't mark it -- I
18 note that you indicate in this letter that Mr. Reiker
19 treats all employees in the same negative fashion.  Do
20 you recall making that statement or do you believe
21 that statement?
```

22      A.  Yes, ma'am.

(Seim Depo. 104:6-22, Appx. pg. 44.)

Such a complaint is not protected activity, as it is not a complaint of discrimination.  *See Bogren*, 236 F.3d at 407 (holding that plaintiff did not engage in activity protected by Title VII where plaintiff complained to the investigator about harassing conduct that was directed at both male and female cadets).

### 2.      There is No Causal Connection Between Any Protected Activity and Any Adverse Employment Action.

Even if Plaintiff's complaint was considered a protected activity, Plaintiff cannot establish a causal connection between his complaint and the termination of his employment.  Plaintiff claims to have submitted his complaint to Bill Wells and Cindy Harris on May 4, 2009.  (Seim Depo. 86:20-87:5, Appx. pg. 40 - 41.)  Plaintiff then resigned on May 11, 2009.  (Seim Depo. 73:18-74:19, Exhibit 6, Appx. pg. 34-35, 50-52; Wells Affidavit, ¶ 10, Appx. Pg. 95.)  Pursuant to his resignation, Miles Riker then sought to fill Plaintiff's shifts and did so without any knowledge of Plaintiff's complaint.  (Riker Affidavit, ¶ 7, Appx. pg. 67.)  The fact that Plaintiff resigned was an intervening event that severed any causal connection between Plaintiff making his complaint and his termination.  *Argo v. Blue Cross and Blue Shield*, 452 F3d 1193 (10th Cir. 2006) (holding that intervening events can defeat an inference of retaliation); *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1136 (7th Cir. 1997) (an intervening satisfactory performance rating defeats causal link).  More than temporal proximity is needed to establish causation in a retaliation case.  *See, Peterson v. Scott Cnty,* 406 F.3d 515, 524 (8th Cir. 2005); *Smith v. Fairview Ridges Hosp.,* 625 F.3d 1076 (8th Cir. 2010).

### 3.      Plaintiff Cannot Overcome Three Eagles' Legitimate, Non-Discriminatory Reason for Plaintiff's Termination.

The federal courts have often reiterated the notion that they "do not sit as a super-personnel department that reexamines an entity's business decisions." Rather, their only authority is to determine whether there is a genuine issue for trial on the question whether [Employer] discharged [Employee] because of his [disability]. *Id. Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 812 (8th Cir. 2005) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)).

Three Eagles had a legitimate, non-discriminatory reason for ending Plaintiff's employment.  When Riker sent an innocuous e-mail to the Plaintiff telling him he had filled his position on one of the radio stations from which he had resigned, Plaintiff sent back a vicious disparaging and overly reactive e-mail.  Three Eagles had every right to fear putting him on the air.  (Riker Affidavit, ¶ 9, Exhibit B, Appx. pg. 68, 77-80; Wells Affidavit, ¶ 11, Appx. pg. 95.)  The requirement that Plaintiff stop working on May 19, 2009, was solely because his volatile conduct caused concern that he would inappropriately express his anger over the air.  It had nothing to do with any complaint Plaintiff may have previously made – as clear from the fact that Riker, who recommended the termination, had no knowledge of Plaintiff's complaint at the time.   (Riker Affidavit, ¶ 7, Appx. pg. 67.)   Plaintiff has not and cannot show that this legitimate, non-discriminatory reason is pretextual.  He cannot point to a single similarly-situated employee who did the same thing and was not terminated.  Moreover, he can point to no one who was allowed to rescind their resignation.  As such, Plaintiff's retaliation claim must fail.  *See, Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076 (8th Cir. 2010).

**D.     Plaintiff Cannot Establish a Cause of Action for Discrimination Based on Perceived Sexual Orientation.**

Plaintiff also alleges that he was discriminated against on the basis of his perceived sexual orientation.   To establish discrimination, Plaintiff must survive the burden-shifting

analysis of *McDonnell Douglas v. Green,* 411 U.S. 792 (1973).  As discussed above, Three Eagles had a legitimate, non-discriminatory reason for accelerating Plaintiff's resignation date. Three Eagles could not risk putting someone on the air who demonstrated such angry and erratic behavior.

Plaintiff cannot establish that Three Eagles' legitimate, non-discriminatory reason for accelerating Plaintiff's resignation date was pretext for discrimination.  Plaintiff attempts to show pretext by pointing to comments made by Riker.  The only alleged comment made directly relating to Plaintiff's sexual orientation was a comment from Riker that he *didn't care* if Plaintiff were gay.  This comment does not establish discriminatory animus by any means.  Likewise, the other indirect comments allegedly made by Riker do not establish discriminatory animus.  These alleged comments, that Plaintiff would "make some man very happy some day" or that he "knew Plaintiff was a pansy," are isolated, sporadic incidents that had no relation to the termination decision.  *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S. Ct. 367 (1993) ("mere utterance of an…epithet which engenders offensive feelings in an employee...does not sufficiently affect the condition of employment to implicate Title VII") (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 67 (1986); *Duncan. v General Motors Corp.,* 300 F.3d 928 (8th Cir. 2002).  These comments are not only sporadic, but they are not negative in nature and cannot serve as evidence of discrimination.  Because Plaintiff cannot establish pretext, his claim must fail.

**E.**     **Plaintiff Cannot Establish a Cause of Action for Wrongful Termination in Violation of Public Policy.**

Under Iowa law, an employee that asserts a wrongful discharge claim based on violation of public policy must show: (1) existence of clearly defined public policy protects activity; (2) this policy would be undermined by discharge from employment; (3) challenged discharge was

result of participating in protected activity; and (4) there was lack of other justification for termination. *Tiengkham v. Electronic Data Systems Corp.*, 551 F.Supp.2d 861 (S.D.Iowa 2008).

Although the Iowa Supreme Court has held that an employer may not terminate an at-will employment arrangement for reasons that violate public policy, that court has explicitly held that the Iowa Civil Rights Act is the exclusive remedy for claims based on discrimination. *See Greenland v. Fairtron Corp.*, 500 N.W.2d 36, 38 (Iowa 1993). As such, any claim based on alleged discriminatory behavior, such as the present claim, is preempted by the statutory scheme of the Iowa Civil Rights Act. *Mitchell v. Iowa Protection and Advocacy Servs. Inc.* 325 F3d 1011 (8th Cir., 2003). Since Plaintiff's claim is based on alleged discriminatory practices and already brought under the Iowa Civil Rights Act, his wrongful termination in violation of public policy claim must fail.

## IV.   CONCLUSION

Plaintiff's allegations of failure to accommodate are without merit. Plaintiff was granted the requested accommodations of a chair and time off for his medical condition. Moving Plaintiff from a morning shift was simply not a reasonable accommodation, given the fact that Plaintiff could and did perform the essential functions of his morning shift. Plaintiff's allegations of discrimination and retaliation are simply without merit. Plaintiff was legitimately denied promotions and could hardly expect to be promoted within the first few months of his employment. He then resigned, and his resignation date was legitimately accelerated, due to his rash and unstable behavior. Three Eagles simply could not risk putting Plaintiff on the air, in light of his behavior. As such, Plaintiff cannot sustain any cause of action he has alleged. For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's Motion for Summary Judgment on any and all of Plaintiff's claims.

THREE EAGLES COMMUNICATIONS,
INC., Plaintiff,

By:     /s/  Patrick J. Barrett
        Patrick J. Barrett
        Cristin M. Berkhausen, IA ID# AT0009250
        FRASER STRYKER PC LLO
        500 Energy Plaza
        409 South 17th Street
        Omaha, NE 68102-2663
        (402) 341-6000
        ATTORNEYS FOR DEFENDANT

569520