```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF IOWA
            CENTRAL DIVISION
```

| | |
|---|---|
| BRIAN D. SEIM,<br><br>      Plaintiff,<br><br>v.<br><br>THREE EAGLES COMMUNICATIONS, INC.,<br><br>      Defendant. | **No. 09-CV-3071-DEO**<br><br><br>**ORDER** |

**TABLE OF CONTENTS**

**I. BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . 1

**II. DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . 6
    **A.** *Seim's Disability Discrimination Claim* . . . . . 7
    **B.** *Seim's Perceived Sexual Orientation Discrimination Claim* . . . . . . . . . . . . . . . . . . . . . . 11
    **C.** *Seim's Retaliation Claim* . . . . . . . . . . . . 16
    **D.** *Seim's Wrongful Termination in Violation of Public Policy Claim* . . . . . . . . . . . . . . . . . . 17

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . 18

Before the Court is the motion for summary judgment filed by Defendant Three Eagles, Inc., on January 6, 2011. Docket No. 13. As set forth below, the Court grants in part and denies in part Three Eagles' motion.

### I. BACKGROUND

Beginning in November of 2008, Plaintiff Brian Seim worked as an on-air radio personality for Three Eagles, which

operates seven radio stations in the Fort Dodge, Iowa, area. Docket No. 13-3 at 5. Mr. Seim's starting position with Three Eagles was as the morning host of KWMT,[1] though he later took on additional shifts later in the day. Docket Nos. 13-3 at 5. Seim had significant experience working as a morning radio host prior to joining Three Eagles. Docket No. 13-3 at 12. Seim was supervised directly by KWMT Program Director Joe Zimmerman when he started working for Three Eagles. Within a month or two of his start with the company, Seim began being directly supervised by Operations Manager Miles Riker and one of Riker's subordinates, Duane Murley, who was promoted to the KWMT Production Director position vacated by Zimmerman. Id. at 6, 67-68.

Mr. Seim suffers from Graves' disease, "an autoimmune disorder that leads to overactivity of the thyroid gland (hyperthyroidism)." PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001398/. Seim's condition was previously treated with radiation therapy "that essentially destroyed his thyroid gland," and as a result he must now take medication designed to provide the hormones once produced naturally by

---

[1] Seim testified in his December 21, 2010, Deposition that he arrived at work at 5:00 a.m. and his morning show lasted from 6:00 to 10:00 a.m. Docket No. 13-3 at 5.

his thyroid. Docket No. 17-3 at 2. Seim claims he suffers several symptoms of the disease, including rapidly deteriorating vision, weight fluctuation, insomnia, narcolepsy, anxiety, swelling and skin lesions of the lower extremities, and difficulty standing for long periods of time. Id.; see also Docket No. 13-3 at 8. According to Seim's deposition testimony, existing treatments can ease some, but not all, of these symptoms, but he cannot afford all such treatments. Docket No. 13-3 at 10-11. Seim claims he informed several members of management at Three Eagles he had a "blood disease" and would require occasional time off. Docket No. 17-3 at 3-5. Seim also claims that not long after his hiring, his medications began to make him drowsy and confused and caused him to slur his speech. Docket No. 17-3 at 3-5, 8-10. Seim claims that these effects occurred in the early morning but wore off before mid-day; and for this reason, he requested transfer to several available afternoon shifts. Id. These requests were allegedly denied. Id. Seim further claims his disease makes standing for prolonged periods painful. Id. Radio broadcasters at Three Eagles typically stood during their on-air programs; Seim requested a chair to avoid prolonged standing. Id. Although the

request was allegedly denied, another employee brought a chair from the employee's home for Seim to use. Id.

In addition to these alleged refusals on the part of Three Eagles to accommodate Mr. Seim's Graves' disease and the side effects of medications, Seim alleges that during his employment with Three Eagles he was harassed on several occasions because he was perceived to be gay. Docket No. 17-3 at 8-11. According to Seim, these incidents involved verbal taunts, inappropriate questions about Seim's sexuality, unwelcome physical contact, and vandalism of his car. Id. Seim specifically alleges that, on at least three occasions, Mr. Riker asked if Seim was gay; Riker also repeatedly inquired as to whether Seim's blood disease was AIDS; when the topic of a new women's bathroom at Defendant's Fort Dodge radio station came up, Riker stated that Seim should be sent to check it out; when Seim asked Riker if he could interview the first gay couple in Iowa to be civilly united, Riker responded that the story was "perverted" and said "I knew you were going to ask me that"; Riker refused to investigate two incidents in which Seim's car was vandalized with anti-gay graffiti while parked at Defendant's radio station; on the day Seim was terminated, Riker told Seim he knew he was a pansy

the day he saw him; and on one occasion Riker pinched Seim's breast and told Seim he would make some man happy some day. See Docket Nos. 13-3 (Seim Dep.), 17-2 (Seim Stmnt. of Addt'l Mat. Facts in Resist. to Def.'s Mot. for Summ. J.), and 17-4 (Seim Aff.).

Mr. Seim claims he repeatedly complained to superiors that he was being discriminated against on the basis of his Graves' disease and his perceived sexual orientation, but that no actions were undertaken to resolve these issues. Seim resigned shortly after one such alleged complaint, but claims to have rescinded this resignation almost immediately. Three Eagles denies having any knowledge of such recision. Seim was ultimately terminated in May 2009.

Seim filed his complaint against Three Eagles on November 5, 2009, alleging disability discrimination under federal and state laws, perceived sexual orientation discrimination under state law,[2] retaliatory discharge in violation of federal and state laws, and wrongful termination in violation of public policy and under state law. Docket No. 2 (Seim's Complaint).

---

[2] Although Mr. Seim's Complaint indicated this claim was being pursued under the Iowa Civil Rights Act, the parties have, in their subsequent pleadings and in argument before this Court, analyzed this claim under federal law. The Court will likewise consider this claim in this manner.

Three Eagles seeks summary judgment on all of the foregoing claims, and Seim resists summary judgment. Docket Nos. 13 and 17. The matter came before the Court for oral argument on March 3, 2011, and is now fully submitted.[3]

## II. DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record."

---

[3] Following the March 2011 Hearing, the Court ordered supplemental briefing to determine whether Seim had exhausted his administrative remedies as required to pursue his ADA and ICRA claims. Docket No. 23. The documentary evidence submitted by Seim in response to the Court's Order (including copies of his Equal Employment Opportunity Commission/Iowa Civil Rights Commission Charge and Right-to-Sue Letters, none of which had been made a part of the record in this case) demonstrate Seim did in fact exhaust his administrative remedies prior to filing the instant action. Docket No. 24-1. The parties have expressed to the Court that exhaustion is not a disputed issue in this matter.

6

Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### A. *Seim's Disability Discrimination Claim*

Mr. Seim claims Three Eagles discriminated against him because of his disability in violation of the Americans with Disabilities Act (ADA) and Iowa Civil Rights Act (ICRA).[4] Seim's ADA claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792

---

[4] When the parties in disability discrimination litigation "do not dispute the application of federal analysis, disability claims under the ICRA are generally analyzed in accord with the ADA." Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007) (citing McElroy v. State, 703 N.W.2d 385, 391 (Iowa 2005)); see also Tjernagel v. Gates Corp., 533 F.3d 666, 671 (8th Cir. 2008) ("ADA and ICRA disability claims are analyzed under the same standards."); Casey's General Stores, Inc. v. Blackford, 661 N.W.2d 515, 519 (Iowa 2003) (providing that ICRA "only pronounces a general proscription against discrimination and we have looked to the corresponding federal statutes to help establish the framework to analyze claims and otherwise apply our statute"); Schlitzer v. University of Iowa Hospitals & Clinics, 641 N.W.2d 525, 529 (Iowa 2002) ("The common goals of the Federal ADA and our civil rights act have encouraged us to look to the federal statutory and regulatory standards in applying our statute."). Therefore, the Court will analyze both Seim's ADA and ICRA disability discrimination claims using federal law. The Court will refer to both types of claims as "ADA claims" in this Order.

7

(1973). To establish a prima facie case, Seim must establish (1) that he had a disability within the meaning of the ADA; (2) that he was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that he was subject to an adverse employment action due to his disability. Duello v. Buchanan Cnty. Bd. of Supervisors, 628 F.3d 968, 972 (8th Cir. 2010). If Seim establishes a prima face case, then Three Eagles must come forward with a legitimate, nondiscriminatory reason for its adverse employment decision. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044 (8th Cir. 2005). If Three Eagles does so, then Seim must show that Three Eagles' reason was pretext for discrimination. Id. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12101(1).[5] To show that he

---

[5] Congress recently enacted the ADA Amendments Act of 2008 (ADAAA), effective January 1, 2009, which expanded the class of individuals entitled to protection under the ADA. Pub. L. 110-325, § 2, Sept. 25, 2008, 122 Stat. 3553. The Court finds the ADAA should be applied in this case because Mr. Seim's claims all appear to stem from acts that occurred *after* the ADAA's effective date of January 1, 2009. Cf. Nyrop v. Indep. Sch. Dist. No. 11, 616 F.3d 728, 734 n.4 (8th Cir. 2010) (ADAA amendments are not retroactive and should not be applied to alleged acts of discrimination prior to its effective date).

was qualified to perform his job, Seim "must demonstrate that he meets the essential prerequisites for the job . . . and that he can perform the essential functions of the job with or without a reasonable accommodation." <u>Duello</u>, 628 F .3d at 972.

Mr. Seim argues that his Graves' disease and the side effects of medications he uses to treat it are a disability that substantially limited the major life activities of sleeping; standing; speaking; concentrating; thinking; communicating; working; and the functions of his immune, circulatory, and endocrine systems. Docket No. 17-3 at 3. In light of the record evidence—including Seim's Affidavit (Docket No. 17-4) and his deposition testimony (Docket No. 17-5; <u>see also</u> Docket No. 13-3 at 4-47)—the Court concludes that a reasonable jury could find that Seim was substantially limited in these major life activities.

As for whether Mr. Seim was qualified to perform the essential functions of the job, with or without reasonable accommodation, Seim's position appears to be that, although he was initially able to perform the essential functions of his morning shift without accommodation, within a few months of his hiring, accommodations became necessary due to a worsening

9

of his condition and the emergence of several side effects of his medications. The parties agree Seim requested three accommodations: a chair, time off for medical treatment, and a later shift. Although radio personalities at the station typically stood during their broadcasts, Seim requested a chair because standing for this length of time—indeed, for any length of time beyond ten minutes—was allegedly very painful. Seim alleges he conveyed this to Riker, but Riker refused his request. (A few days later, Seim claims another employee brought a chair from the employee's home for him to sit on.) Seim alleges his requests for time off related to his disability were granted, but he was the only employee at the station who was required to provide documentary proof that his absences were medical in nature. Finally, Seim alleges he repeatedly requested transfer to available positions later in the day to accommodate his disability, but his requests were denied and the other positions were filled by less qualified individuals. Although the evidence supporting these allegations is not overwhelming, particularly in comparison to much of the contradictory evidence offered by Three Eagles, the Court nevertheless finds that genuine issues of material fact exist as to whether Three Eagles was aware of Seim's

disability and whether Three Eagles failed to reasonably accommodate the disability. In addition, whether Three Eagles engaged in an interactive process to determine the appropriate accommodation and whether it was responsible for the breakdown, if any, in the interactive process are questions of fact for the jury.

Given the foregoing, the Court denies Three Eagles' motion for summary judgment on Seim's disability discrimination claims.

**B.** ***Seim's Perceived Sexual Orientation Discrimination Claim***

Mr. Seim also claims he was discriminated against on the basis of his perceived sexual orientation, in violation of Iowa Code § 216.6(1)(a).[6] Seim alternatively characterizes

---

[6] This section provides that it shall be an unfair or discriminatory practice for any

> Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the age, race, creed, color, sex, *sexual orientation*, gender identity, national origin, religion, or disability of such applicant or employee, unless based upon the nature of the occupation. If a person with a disability is qualified to perform a particular occupation, by reason of training or experience, the nature of that occupation shall not be the basis for exception to the unfair or discriminating

11

this claim as one based on same-sex sexual harassment under Title VII.[7] The parties appear to agree this claim should be assessed under Title VII and the burden-shifting framework of McDonnell Douglas.[8]

To make a prima facie case under the McDonnell Douglas framework, Seim has to show that "'(1) [he] was a member of the protected group; (2) [he] was qualified to perform the job; (3) [he] suffered an adverse employment action; and (4)

---

practices prohibited by this subsection.

Id. § 216.6(1)(a) (emphasis added); see also Iowa Code § 216.2(14) ("'Sexual orientation' means actual or perceived heterosexuality, homosexuality, or bisexuality.").

[7] See 42 U.S.C. § 2000e-2(a)(1) (providing in relevant part that it is illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."); see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998) ("If our precedents leave any doubt on the question, we hold today that nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex."); accord Schmedding v. Tnemec Co., Inc., 187 F.3d 862 (8th Cir. 1999); Quick v. Donaldson, 90 F.3d 1372 (8th Cir. 1996).

[8] The parties also appear to agree that this claim should be analyzed using federal law. Cf. Lewis, 591 F.3d at 1038 ("The parties agree that Lewis' ICRA and federal [same-sex sexual harassment] claims are analytically indistinguishable." (citing Quick, 90 F.3d at 1380)).

12

circumstances permit an inference of discrimination.'" Lewis v. Heartland Inns of Am., L.L.C., 591 F.3d 1033, 1038 (8th Cir. 2010) (quoting Bearden v. Int'l Paper Co., 529 F.3d 828, 831 (8th Cir. 2008)). "Such a showing creates a presumption of unlawful discrimination, requiring [Three Eagles] to produce a legitimate nondiscriminatory reason for its employment action." Lewis, 591 F.3d at 1038 (citing Bearden, 529 F.3d at 831-32). "The burden then returns to [Seim] to prove that [Three Eagles'] proffered reason for firing [him] is pretextual." Id. (citing Bearden, 529 F.3d at 832).

Regarding the first step of the McDonnell Douglas analysis in this case, Three Eagles challenges only Seim's ability to satisfy the fourth and final element of his prima facie case—that is, the required showing that the circumstances surrounding his termination permit an inference of discrimination. The evidence Seim relies on to satisfy this aspect of his prima facie case is the same evidence he relies on to show pretext at step three of the McDonnell Douglas analysis. See Putman v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003) ("[E]vidence of pretext—normally considered only at step three of the McDonnell Douglas analysis—[can also] satisf[y] this aspect of the plaintiff's

prima facie case burden.").

Evidence that the circumstances surrounding Mr. Seim's termination permit an inference of same-sex sex discrimination include the sworn statements in Seim's Affidavit and his deposition testimony alleging that Mr. Riker repeatedly questioned Seim's sexual orientation and whether Seim had AIDS, Riker refused to investigate whether Three Eagles staff vandalized Seim's car with anti-gay graffiti, and Riker pinched Seim's breast and told him he would make some man very happy some day.  See supra Part I on pages 3-4.  The Court "recognize[s] that '[r]emarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision.  The plaintiff must show that the employer actually relied on [his] gender in making its decision.'"  Lewis, 591 F.3d at 1041 (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989)).  However, Seim has met this burden at summary judgment stage by providing evidence that the comments he cites "were not 'stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself[.]'"  Lewis, 591 F.3d at 1041 (quoting Simmons v. New Pub. Sch. Dist. No. Eight, 251 F.3d 1210, 1214-15 (8th

14

Cir. 2001)). Riker was Seim's direct supervisor and was the most senior employee at the affiliate Three Eagles station where Seim worked. And although several individuals besides Riker apparently took part in the decision to terminate Seim, they clearly relied to some degree on Riker's recommendation that Seim be terminated. Docket Nos. 13-1 at 21; and 13-3 at 69-70.

Evidence, apart from the foregoing, that Three Eagles' reason for the termination (i.e., that Seim was acting erratically and inappropriately, and thus was unfit to take to the airwaves) were pretextual include the fact that Seim had a history of good performance at Three Eagles and had in fact been praised for his outstanding performance. Docket No. 17-4 at 4, ¶ 8. On this record, a factfinder could infer a discriminatory motive in Three Eagles' decision to terminate Seim.

Given the foregoing, the Court denies Three Eagles' motion for summary judgment on Seim's perceived sexual orientation/same-sex sexual discrimination claims.

## C. *Seim's Retaliation Claim*

Seim also claims he was unlawfully retaliated against for submitting a complaint about Mr. Riker, in violation of VII. "Title VII prohibits employers from retaliating against employees who oppose discriminatory practices." Lewis, 591 F.3d at 1042 (citing 42 U.S.C. § 2000e-3(a)). "The burden shifting McDonnell Douglas analytical framework applies to this inquiry as well, beginning with the three elements of a prima facie case of retaliation, whether: (1) the plaintiff engaged in protected conduct, including opposition to an action prohibited by Title VII; (2) [he] was subjected to an adverse employment action, and (3) there is a 'causal nexus between the protected conduct and the adverse action.'" Lewis, 591 F.3d at 1042 (quoting Wallace, 442 F.3d at 1119).

"In making out a prima facie retaliation claim, [Seim] need not prove the merits of the underlying claim of sex discrimination." Lewis, 591 F.3d at 1042. "[He] can establish protected conduct 'as long as [he] had a reasonable, good faith belief that there were grounds for a claim of discrimination[.]'" Id. (quoting Wallace, 442 F.3d at 1119). Three Eagles contends Seim's multiple complaints to management were not protected conduct. However, Seim specifically stated

16

in several of his complaints that he was being discriminated against on the basis of his blood disease, as his numerous requests for accommodations were either ignored or denied, and he also complained that his reports of harassment and vandalism to Riker and other supervisors had never been acted upon. Seim thus has provided ample evidence showing he engaged in protected conduct by opposing illegal actions.

There is no dispute regarding whether Seim suffered an adverse employment action. And there is ample record evidence to support a causal nexus between that adverse employment action and Seim's complaints to management. Seim was terminated the same day he sent one of these complaints to Three Eagles' corporate office and his immediate supervisors at the station. Further, the evidence of pretext discussed above applies with equal force in evaluating whether Seim has made out a prima facie retaliation claim.

Given the foregoing, the Court denies Three Eagles' motion for summary judgment on Seim's retaliation claim.

### D. *Seim's Wrongful Termination in Violation of Public Policy Claim*

Finally, Seim claims that, under Iowa law, his termination violated public policy. Three Eagles responds that this claim is preempted by the ICRA, which provides the

17

exclusive remedy for the sort of complained-of conduct related to this claim. The Court agrees.

The Iowa Supreme Court has held that "the ICRA, Iowa Code chapter 216 . . . , provides the exclusive remedy for particular conduct prohibited under that statute." Channon v. UPS, Inc., 629 N.W.2d 835, 857 (Iowa 2001) (citing Greenland v. Fairtron Corp., 500 N.W.2d 36, 38 (Iowa 1993)); see also Canterbury v. Federal-Mogul Ignition Co., 418 F. Supp. 2d 1112, 1118-19 (S.D. Iowa 2006) (holding that former employee's claim that he was wrongfully discharged, in violation of Iowa public policy, was preempted by the ICRA, as the public policy claim and ICRA claim involved the same conduct).

Accordingly, the Court grants Three Eagles' motion for summary judgment on Seim's wrongful termination in violation of public policy claim.

### III. CONCLUSION

**IT IS THEREFORE HEREBY ORDERED** that Three Eagles' motion for summary judgment (Docket No. 13) is **GRANTED** as to Mr. Seim's wrongful termination in violation of public policy claim. Three Eagles' motion for summary judgment is **DENIED** in all other respects.

**IT IS SO ORDERED** this 1st day of June, 2011.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa